Case No. 12-2484, Employment Opportunity Commission v. Ford Motor Company. The oral argument is not to exceed 20 minutes per side. Ms. Coleman for the appellant. May it please the Court, I'd like to reserve 5 minutes for rebuttal, please. That's fine, and you may proceed. This case is not a referendum on telework in general. It is a highly fact-specific case, and because it is a review of summary judgment, this Court must look at all of the evidence in the light most favorable to the EEOC and must make all reasonable inferences in the EEOC's favor. There are three questions for this Court to decide. Was physical presence at Ford's worksite an essential function of Harris' job? Did Ford fail to provide a reasonable accommodation to Harris' disability? And did Ford retaliate against Harris when it fired her after she filed a charge with the EEOC? With respect to the essential function, the ADA and its implementing regulations are clear that an essential function is a task to be performed. It is not the location where the task gets performed. So, for example, the essential function of Harris' job was to buy and sell steel and to ensure that there were no gaps in the steel supply. When Harris made a request to telework, she was not seeking to be excused from an essential function of her job. To the contrary, she was seeking a means by which she could perform the essential functions of her job. Looking at all of the evidence in this case, a reasonable jury could find that telework of one sort or another would have been a reasonable accommodation for Harris' disability. When she asked for telework, she asked for up to four days a week, and the reason she phrased her request that way is because Ford's written telework policy expressly contemplates that an employee may be able to telework four days per week. Up to four days is certainly not the same as four days per week every week, and in fact Harris specifically and expressly told Ford that she did not expect to telework that often. Harris had already been doing some work from home. While she was working from home, she received consistently excellent plus performance reviews. I don't understand, Counsel, how you can say that. She had three different experiences with flex scheduling slash telecommuting, and every single one of those experiences resulted in her failing. Well, actually, Your Honor, there were two different experiences where Ford had said we will try this and see how it goes, but in each of those two experiences, Ford had authorized flex time so that she was working outside of core hours, and therefore she wasn't necessarily available when her colleagues were available or when the steel suppliers were available. The request that she was making to Ford in this case, under that request she would have been available during core hours, so the problems with telework that Ford had complained about would not have arisen in this case. Let me quibble with you a little bit. You say there's only two. There's actually two under Don Gronko and one under John Gordon. So the record shows that there were three different attempts to work from home or with flex time and or telecommuting, and the testimony is that she was unable to establish regular and consistent work hours, be they at the office if she was to come in or be they when she was home during these experiences. She had been authorized to work irregular hours during the experiments, and moreover, the reason that telework wasn't working for her when it wasn't expressly authorized by her supervisor, John Gordon, is he told her over and over, if you are too sick to come to the office, then you're too sick to work and don't work. And when she did work sometimes from home anyway to try to stay caught up, she was marked absent. Those absences were used against her later. She wasn't even paid for this work. All of this because she was prohibited to work from home. She fell behind in her work. Her colleagues had to pick up some of the slack. Her stress increased. The nature of her IBS is that when her stress increased, she became sicker. When she became sicker, she had more absences. And then Ford turned around and blamed her for her absenteeism and her deteriorating performance. As the Ninth Circuit said in Humphrey, if telework would have prevented these problems, then Ford can't use these problems to say she wasn't qualified for her job. In some ways, Ford helped cause these problems. Well, you seem to be saying that this is a job that can be done either at work or at home, and let's assume for at least in part that's correct. And you seem to be saying that were she able to stay home, she would have been able to work a regular schedule just from home. And my point earlier was the record seems to say that she didn't work regular hours, whether she was at work or at home during any of these three trials. So could you address that more specifically rather than the more global issue? Well, again, I would say that, in part, she didn't work regular hours from home because Ford told her when it was having these telework experiments that she didn't have to. And then outside the telework experiments... So wait a minute. So you're saying that she was allowed to work four 10-hour days, but they said, oh, we don't really mean it, you don't have to work... No, with flex time, with flex time. She was expressly given an alternative work schedule with flex time. I think it's also important to note that there is medical evidence in this case. There was a letter that went to Ford from Harris's doctor saying that as her stress was reduced, if she had telework, she would get better. Her workload would increase, her stress would decrease, and ultimately she would be spending more time in the office. A jury, a reasonable jury, looking at all of the evidence and making all inferences in favor of the EEOC, could find that Ford's response to Harris's request was unreasonable. In the first place, she made her request, her official request, for an accommodation under the ADA in February. It took two months for Ford to respond in any fashion, two months to schedule a meeting. And then at that meeting, Ford offered explanations for why it was denying her request that a reasonable jury could reject. Ford, first of all, said that her job, and they repeated this over and over in their briefs, that in her job, at any given time, in any given day, it was essential that she be available for spontaneous in-person, face-to-face meetings. However, Ford permitted co-workers, Harris's co-workers, who were doing the very same job that she was, to telework. Her co-workers were teleworking one or two days per week. Now, granted, they were teleworking on a predictable schedule, but nevertheless, if Ford is correct that her job, in any given day, at any given time, could require spontaneous in-person meetings, those people who were teleworking couldn't do that while they were working from home. Yet Ford managed to work around it for them and was unwilling to try to work around it for her. Can an employer just not have teleworking? Yes, certainly an employer cannot have teleworking. However, even for an employer who does not have teleworking, if faced with an employee with a disability, under the Americans with Disabilities Act, and for whom working from home could be a reasonable accommodation to that disability, with or without an existing telework policy, the statute might require them to allow this one disabled employee to work from home. How do you equate people that are telecommuting one day a week on a regularly scheduled day that everybody knows about in advance to up to four days per week on an unscheduled basis, no way to know in advance what days, if any, she would actually utilize this? That's an excellent question, and that goes, again, to the reasonableness of Ford's response. Ford chose to interpret Harris's telework request in the broadest possible terms and then cut off all discussion of telework so that when Ford said no, Harris understood that she had been shut down. Ford never asked her to clarify her request, although she testified that if she had been offered one or two days per week, that would have been acceptable and she would have taken that. So what if everything else about the case is exactly the same but her request is up to five days a week? Would Ford have to do what you're talking about? Oh, well, let's talk here, or can they say, are you kidding me? So you're saying you're up to potentially includes every working day of the year? Well, Ford does not have to say yes to the first thing on the table, but Ford does have to engage... So if the request is up to five days, could Ford have said no, that's that? No. Why not? Because the statute requires an employer to engage in an interactive process to try to determine the appropriate... But not if the request is unreasonable. Up to five days is, it seems to me, obviously an unreasonable request. Yes, but there was an obvious alternative that Ford didn't use. They had an existing telework policy and her co-workers were teleworking pursuant to that policy. The most obvious comeback for Ford... It's obvious for her. I don't understand why it's so obvious to Ford but not to her. Because she felt shut down. She asked for telework and Ford said, no, you can't telework, but here's what we'll do for you. And what they did was they offered two alternatives that they called reasonable accommodations, neither one of which was effective. But at that point, where do you drive the authority that they had to then bargain with her in connection with a fewer number of days? Well, the authority comes directly from the ADA and its implementing regulations and this court's law. Just tell me where it is. I can't find it in the ADA or in the implementing regulations. They have to offer a reasonable accommodation. They offered her two. She did not. She refuted them. They did not offer her reasonable accommodations. What they offered were two things. First, they offered that they would move her desk closer to the restroom. That was not a reasonable accommodation because, as she testified, on days when her IBS was bad, she simply had to stand up and she would have an accident.  which would not have taken care of the odor, which, as everybody knows from children with diapers, can sometimes be very extreme. An employer is not offering a reasonable accommodation by requiring an employee to humiliate herself in front of her coworkers. The second thing that Ford offered was to help her look for a different job within Ford that might possibly be more amenable to telework. It is true that the ADA contemplates job transfers as a potential reasonable accommodation in some cases. However, the regulations emphasize that this is an accommodation of last resort. The purpose of a reasonable accommodation requirement is to enable an employee to perform the essential functions of the job that she already has. So until the employer and the employee engaging in a good faith and directive process have exhausted the search for a reasonable accommodation that would enable her to do her current job, it's premature to start talking about transferring her out. This court said in Cardenas Mead that if an employer does not engage in good faith in the interactive process, which a jury can certainly find that Ford failed to do here by cutting off all discussion of telework. But didn't she cut off all discussion of the possibility of another position? I mean, so Ford has to not only respond with a couple of options, but then get into a bargaining about number of days, as I understand your argument. But when they propose, you know, maybe there's a different position that's easier for telework, your position is she can just cut that off, no further discussion? Well, as I said, a new position would be an accommodation of last resort. Well, that's your regulation. But, I mean, is that your argument, that she has no reciprocal obligation to work with them on their proposal? Well, again, as I said, because this is summary judgment, this court must look at all of the evidence in favor of the EEOC and must make all reasonable inferences in the EEOC's favor. A reasonable jury could find that she could have been accommodated within her current job, that some version of telework, whether it be the up to four days flexible schedule, whether it be one or two days possibly on a flexible schedule, whether it be a trial period. She testified having, you know, she had familiarity with the symptoms of her IBS. She testified that 30 to 60 days of telework probably would have solved the problem completely. Well, I mean, she had two trial periods, granted with flex time, but she had two of those, right? Yes. How many trial periods do they have to do? Well, this, again, this would not have been with flex time. One of their major objections was she wouldn't be available, but she would be available if she was working during core business hours. As she testified, even when she was in the office, most of her work was done electronically. She communicated with her colleagues down the hall most frequently by email or telephone. So there is nothing... You know, a jury could infer that if that's what she was doing in the building, then she could certainly do that from her home as well. She wasn't doing it always, you know? I mean, I'm familiar with the testimony, but there is an awful... Let me be candid with you about the concern I have, is there is an awful lot of evidence in this record that one of the principal things these buyers have to do is deal with emergency situations, disruptions in the supply chain. In the car business, that's a really big deal. And, I mean, would you agree, first of all, set aside whether it has to be in person or not, would you agree that that is a very important job function for this position? Absolutely. Okay, so really the precise dispute is whether that needs to be done in person. Fair? Yes. Why? I mean, they have lots of evidence that it needs to be done in person. I think even her testimony implies that it's often done, sometimes done, in person. What would allow a jury to reject the judgment that has to be considered under the statute, namely Ford's, that it should be in person during these emergencies, and say, actually, we know better, and it doesn't need to be in person? In Rohrer, this court said that although an employer's judgment must be considered, it is not the only thing that should be considered. Ford was allowing her co-workers to telework, and that is critical. But Rohrer was a case where their actual conduct was inconsistent with the position that they were taking in terms of their telecommuting policy. So Rohrer recognizes, it seems to me it makes sense to recognize, that you can't take a position in this case that's inconsistent with what you're actually doing in the field. There's no such situation here that at least I can find, unless you can point one out to me. Well, yes, here again, Ford is saying that on any given day, and on any given day, five days a week, she might need to do a face-to-face meeting, yet her colleagues were permitted to work from home. The colleagues that were permitted to work from home all had agreed in advance that they would come in on that day if there was an emergency that day that required their physical presence at the office, did they not? They did, however, when Ford... Did she ever agree to be on a telecommuting schedule that required her to come in, if necessary, on a given day? It never came up, because Ford cut off the discussion of telework. A reasonable jury could find that if they had offered her precisely the same telework arrangement that her co-workers had, with obviously the ability to take sick leave when she was sick, which her co-workers had that ability... So your bottom-line position on that is that having asked for something that I would submit is considerably different than her co-workers' experience. At that point, Ford had a responsibility to come back and say, you can't have that, but we will give you the same thing the other employees have. Yes, that's correct. That was Ford's responsibility. Yes. As opposed to her responsibility, once they gave her two things that you say were unreasonable. You deny that she had, at that point, any responsibility to say, well, okay, you won't let me do it four days, how about let me do it one day if I agree to come in if necessary? If Ford had suggested in any way that it was open to further discussion on telework, then certainly a jury could place that burden on her. In fact, a jury could still place that burden on her and say she should have pursued that, her fault, she loses. But again, we're on summary judgment. What case do we look at to say that it was her burden to propose this alternative accommodation once she rejected Ford's proposed accommodation? There is no case that would say that once the employer has shut down the interactive process, then she needs to keep saying, but wait a minute, let's talk more. The employer must engage in good faith. And this is summary judgment. A jury making all reasonable inferences for the EEOC can find that Ford shut down all discussion of telework and she felt that it would be pointless to then go on and say, but I can telework. I see that my time is up, and I'd like to reserve time for rebuttal. Yes, you will have your full rebuttal time. Thank you. Good afternoon, Your Honors. Helgi Walker for Ford Motor Company. The EEOC at the podium just retreated from the doctrinal position that it took below, and that is the subject of the panel opinion today, which is the notion that the workplace is what the complaining employee or what federal judges define it to be. We do believe that doctrinal error needs to be corrected, and the rule of Smith v. Ameritech reinstated. Under that standard, which appears to be what the agency is arguing today, the grant of summary judgment for Ford was quite properly entered. There was no evidence, if you look at the attachments to the government's opposition to our summary judgment motion, that could have supported the notion that Ms. Harris was either a qualified employee or what she had asked for was reasonable. A couple of specific points. She asked for up to four days. That obviously would create an entitlement in her to telecommute for four days a week, and given her attendance history, where there were weeks at a time where she didn't come into the office at all, that would have been a reasonable construction, but let's assume it was just four days. She sent a follow-up email... Did Ford offer up to four days for other employees in this job role to telecommute? No, Judge Moore. No resale buyer telecommuted for more than one day a week. I know that no one did telecommute even for two days. No. In practice and the interrogatories that we served on the EEOC that they attached to their summary judgment opposition show that no resale buyer telecommuted for more than one day a week, and Ms. Harris's co-workers and supervisors uniformly testified this was not the kind of job, as Judge Ketlik was suggesting, that really can be done out of the office. My question had been, was the Ford policy to allow up to four days? Somewhere I thought I heard your opponent say that this was what Ford said the others could do, not that anyone had done it, but that they were allowed... Your Honor, Ford has a telecommuting policy that says you can have an agreement with your supervisors. This is company-wide to telecommute up to four days. It also says, as the agency has ignored consistently, that it won't be appropriate for every job and it won't be appropriate for every employee. But the up to four days came from a Ford policy that allowed up to four days. It wasn't something that this employee made up as a possibility. No, but she sent a clarifying email, Judge Moore, in April to her superior when she lodged her first discrimination complaint that reiterated her request, and she put it then as, I'd like to telecommute on days I am not able to leave my home. That's either up to four or even more than four. So she nowhere refined her request to be one to two days. The first time she said that was in litigation. We offered, going to another point that Ms. Coleman just made... Before you go to another point, let me ask you how those telework agreements functioned. Wasn't Robert Bowles another buyer in Harris' department? I'm not sure if he was a truck buyer or a resale buyer, but he was a buyer, yes. And didn't he have a telework agreement that said all tasks performed at company worksite can be performed at alternate worksite? Yes, but his agreement was for one day a week, Judge Stranch. One day a week. Then we're back to the question of do you have to engage in an interactive process with an employee to determine how many days a week? I guess that's the question before. Yes. Kind of the practical reality of it is the issue that was addressed by your opposing counsel. So we let Mr. Bowles have an agreement that says he can do then all of his duties can be done at an alternate site, because that's what it says. Well, but again, it also says it was one day a week. He agreed to come into the office for emergencies. He agreed to work during core business hours, and he was subject to his boss's supervision. Did you propose here an agreement that would say that all tasks performed at the company worksite can be performed at an alternate worksite for her, and that she might have that very form of telework agreement that Mr. Bowles had, and that she could work at her home one or two, or you would discuss with her interactively how many days? I would refer you, Judge Stranch, to the notes of the April 6th meeting that the Ford Human Relations people had, Human Resources people had with Ms. Harris at page 1321 of the record. Ford had a two-hour meeting with Ms. Harris and did exactly what the EEOC regulations say you should do. We went through every element of her job and all the tasks and asked her to explain to us how she could do those at home. There were at least four things that she said she could not do at home. Supplier site visits, supplier meetings, a certain pricing called tabs pricing, and interactions with a particular co-worker. So even on the agency's own evidence... ...that that would be the same thing for Mr. Bowles, who was a buyer in her department, correct? I'm not exactly sure that Mr. Bowles was a resale buyer, and we'll follow up with the court on that, Your Honor. I'm just struggling with the fact that you have an existing written agreement with another person in her department performing presumably either the very same duties or very close to the same duties, and you have agreed that he can have one day. And my understanding of your meeting with her is that she backed off of the four days and said one or two would work and that there was a refusal at that point from Ford to enter that type of agreement with her. Can you point me in the record to where I'm wrong on that? At the end of the meeting, the second meeting that we had with her, Karen Jurek said, we will continue to advocate for you and are willing to talk with you again if you identify another accommodation we would like for you to remain in the workplace. It was... She identified one to two days on an agreement comparable to Mr. Bowles, and can you point me to where in the record you said yes or no to that interactive process? Judge Strange, it was not our obligation to make the proposal of a reasonable accommodation. She did not do that. Her proposal in her February email said up to four, and then in her April email she reiterated she needed to telecommute on days when she could not leave her house. The one to two days came from the declaration that she filed in the district court litigation. But we did, Your Honor, make an offer, and here's what we suggested. We offered, and this was above and beyond the call of duty under the ADA, to find her another job at Ford. She shut down that conversation. She rejected that very reasonable opportunity. There are other jobs at Ford where you could telecommute more extensively, and on the basis that she wanted to. She rejected that. Eight days later she filed her EEOC charge. That's not the behavior of a person who's engaged in good faith in the interactive process. I just want to be very sure that we're on the same page. You've said, I think if I heard you very clearly, that the one to two days only occurs in a declaration in litigation, as opposed to Judge Strange at least inquired, wasn't there a point at which she raised one to two days in the interaction? So are you standing by the statement that it's only in litigation? There's a sentence in the notes that says perhaps she wouldn't need to do it as much as four days, but she comes back and says in an April email... Sorry, when you say in notes, is this her notes or Ford's? These are Karen Juric's notes of the interactive meeting that we had with her. Karen Juric's is a Ford person? Human Resources Personnel Director. What's the page on that? This is at page 1319 in the record. Thank you. And what do the notes indicate about your response to the perhaps I can use one or two days? Well, we asked her to talk about other ideas that she might have, including we offered to find her another job. I'm not asking about the end of the meeting. I'm not talking about the walk-away statements to one another. I'm talking about her statement noted in your client's records that she had indicated that it might be one or two days she could make work. What do those records indicate Ford's response to her request? Ford's response was that there were other elements of her request that were problematic, Judge Stranch. The fact that she wanted an unpredictable schedule, she was unable to commit to working during core business hours, she was unable to commit to coming in on emergencies, into the office for that. Nobody, nobody at Ford is allowed to make their own schedule on their own discretion, and it's the unpredictability at the end of the day that distinguishes Ms. Harris from any other ADA plaintiff. Did the notes at 1319 include that list of concerns? I know it's in the record, Your Honor, that there were a lot of problems. Her supervisor, Joe Gordon, said the basic problem was predictability. I'm not asking about what problems there are in the record. I'm asking about the interactive process. She was definitely... Do those notes include a response from Ford other than your earlier statement that, well, there are other problems with your request? Yes. Joe Gordon is in that meeting, and he says that a lot of the problem here is the unpredictability of what she wanted. She wanted to set her own schedule, Judge Stranch, and nobody at Ford is allowed to do that. She wanted to be out of the office 80% of the time on a schedule determined only by herself at her sole discretion without working core business hours. She had problems with the core business hour requirements during the prior two telecommuting trials that Ford allowed her to do. Walker, let me try to clear something up here. There are two meetings. One is April 9th, the other is April 15th. They're memorialized in notes. They're in the record. First meeting starts at 1319. The second meeting starts at 1321. Yes. And there seems to be an assumption by some that at one or other of those meetings she said, I would like to only telecommute one or two days. I can't find that in either of those notes. The EEOC relies upon these notes, not for a different purpose. So the EEOC must have concluded that these notes are an accurate reflection of what happened in the meeting or they wouldn't rely upon them in support of their case. So is there anything prior to litigation that memorializes what you've been asked, that she said, well, how about one or two days? I think what the EEOC may be referring to is a sentence at page 1320 that said, she said she is not envisioning that she would need to telecommute four days a week. Of course, that's what she asked, and she subsequently said, I need to telecommute on the days I can't leave the house. And her doctor said she can't come to the office on days that her IBS is bad. So to make that argument, one would have to equate, well, I want four days, but I might not need it. You'd have to equate that with the idea that I'm only asking for something less. Right. She was asking for up to four, a maximum of four, she might need to be out of the office four days a week. And more importantly, in the prior email, she said she didn't even refer to the five days. She said, I don't want to come in when I can't work. Exactly. When she can't leave her house, and we know from experience, it wasn't as if we hadn't tried this with her before. We tried over the course of four years to help her improve her performance and her attendance. She was on two telecommuting alternative work schedules, and they failed miserably. Don Gotko testified in paragraph three of her declaration that even when she was working at home, she was unable to work during core business hours. Is it correct that that affidavit speaks to a telecommuting accommodation, not just simply a flex hour? Yeah, that was error in their brief with all respect. What the record shows, what Don Gotko's declaration and her deposition show, is that was a combined telecommuting, ad hoc telecommuting, and an alternative work schedule, which means you can start earlier and end earlier. But she couldn't even maintain those basic requirements while she was working at home. And we did give her a very reasonable offer, which is to find her another job at Ford. She's the one that rejected that out of hand, and under Kiever, she's not entitled to the specific accommodation of her choice. That, of course, is an alternative ground for affirmance here. We don't believe she's carried her burden under Smith to show that she was qualified or that her request was reasonable. But when Ford gave her a reasonable offer of another job at Ford, where she could be out of the office a little more often, she turned that down. Are you contending that if an employee has a job and can be reasonably accommodated in that job, the employer has the option of either extending that accommodation or offering a different job? No, Your Honor. We're saying that we went above and beyond the call of duty under the ADA. Her offer was unreasonable, unpredictable, ad hoc, at will. Okay, but it seems to me that we really, then one really has to concentrate on whether she could be accommodated in this job. Well, under cases like Kiever and the gap, if our offer was also reasonable, then she cannot obtain relief under the ADA. I know, but you retreated from the position that, let me rephrase it. It seems to me that by definition, if somebody can be accommodated reasonably in their job, offering an accommodation in a different job is unreasonable. Let's go back to her request and whether it's reasonable. That's a different question. It's a different question. The question is not whether this whole thing about this other job, it seems to me to be irrelevant except perhaps as relevant to Ford's good faith. But the question is whether she could be accommodated in this job, right? And you say she can't. Because the resale buyer job, there might have been a reasonable accommodation, but what she came forward with was an entirely unpredictable schedule. This particular job requires being there. That's my other question. Did she request to telecommute or did she request to telecommute on a flex schedule? She requested to telecommute. Okay, and you're throwing in the flex schedule. I mean, it seems to me that the case gets complicated because of what led to it. She was permitted to telecommute on a flex schedule and it didn't work. May I clarify? Yes. She was permitted to telecommute ad hoc twice in 2005. The panel opinion is a little confusing on this, with all respect. If you go to Don Gonko's declaration and the EEOC's counsel's own questioning of Ms. Gonko in the deposition, it was a combined flexible schedule and ad hoc telecommuting. Flexible schedule just means start at 7.30, end at 3.30, start at 8.30, end at 4.30. Telecommuting means working from home. She was allowed to do both of those things. That's what I just said. Yes. She was permitted to telecommute on flex time and it didn't work. May I just finish, please? I'm sorry. Yes. If you're permitted to telecommute on a flex schedule, how would anybody ever believe that you could, and you're unsuccessful, that you could then be successful if you had to telecommute not on flex hours, on core hours? She couldn't do one. She certainly can't do the other. It's clear across the country, Judge McKeague, that even when you're working at home, let's assume this job was amenable to telecommuting. Even when you're working at home, you have to stick to your core business hours. You can't work in a job like this, at least, at 2 o'clock in the morning if you feel like it. You need to be working from 8.30 to 3.30. Can we get back to my question? I asked you, I understand, and I was leading up to this, that the facts are that twice she telecommuted on a flex schedule and it didn't work. Okay. The request here was to telecommute, not on a flex schedule. That's the question I asked you. I thought you answered that, no, it was not to telecommute on a flex schedule. It was simply to telecommute. Yes. Okay. So that is what we should be looking at. Now, it seems to me to be a separate question. These are two separate questions in my mind. Can somebody telecommute at this job for one or two days a week or up to four days a week? And could she successfully do it? And if the defense is you can't do that in this job, it is not a reasonable accommodation, it seems to me that that's the basis upon which Ford won. It's a different question to say, look, that's, all right, somebody maybe could do that, but you've shown us that you can't do it, and we just don't want to take another chance with you because we already know you can't. It may be a reasonable request in the abstract, but it's not going to work for you. But I understood that this case was about the first option and that you were not, you did not win summary judgment on the second option. Am I wrong or right? We won on the basis that she hadn't carried her burden to show that she was a qualified individual within the meaning of the ADA because being there for this job on a regular basis more than one day a week is an essential function of the retail buyer job because it's so interactive and it's so about team and group problem solving. But you're right, Judge White. We have to look at whether this job, the resale buyer job, is the kind of job where you can be out of the office 80% of the time. The fact that we... So this whole thing about the flex time really is the kind of thing that you might prevail on at trial because the jury's going to believe that this is just all nonsense anyway, but that's not what's in front of us. I think what it shows legally, Your Honor, and why it is relevant now on summary judgment is that her proposed accommodation wouldn't have been effective anyway, and effectiveness is a part of the inquiry on the reasonable accommodation analysis under the ADA. I understand, but that's not the basis upon which you're litigating this case, is it? We certainly are entitled to argue in this court that her accommodation wouldn't have been effective. It's part of the question whether it was ultimately reasonable, and that is part of the analysis on summary judgment, although we stand by our position that she was not a qualified individual because she couldn't meet the attendance requirement for this job. But the critical thing about her request, you might have a job where you can work by yourself at 2 o'clock in the morning if you feel like it, the medical transcriptionist in Humphrey, for example. Maybe there was a job at Ford like that for her. The resale buyer job is about solving steel shortages so that car parts will keep going to our plants so that our cars will keep moving down the assembly line. This is an emergency nature job. This is you need to be there job. Technology may have changed, but there are all times that we need to get together to solve problems, and that was this job. What she wanted and what distinguishes her, again, is a completely unpredictable schedule that was in her sole discretion to determine. I don't think any of us could do our jobs with colleagues like that. But you said she wanted a completely unpredictable schedule. Yes, she did. But is that what she asked for? That was the nature of her condition, Judge White. That was the entire theory of her request, and it was the theory of her doctor's note, that because her IBS can come on on a moment's notice, she never knows when it might strike. There are times when, at the last minute, she just can't be there. It was in the nature of her request that what she was asking for was unpredictable. That's why she couldn't be there. I thought she was asking to telecommute up to four days a week. She would be there during the core business hours at her telecommuting station in her home. That's not what she said. I thought she was volunteering to be there core business hours, and that Ford, when she was doing her previous telecommuting, said, no, you can't telecommute during core business hours. But in any event, Ford allows other resale buyers to telecommute one day a week, and there are documents in the record that would say that resale buyer A telecommuted on Mondays. So emergencies could arise in terms of steel sales on Monday, and the difference that you're arguing is that that resale buyer A would come into the office. And also because, Judge Moore, they had agreed to adhere to a predictable schedule. If I, as a supervisor, know that somebody's always going to be out on Mondays, I can work around that. I'll schedule our team meetings for Wednesdays. But the thing about Ms. Harris and her request was that you never knew from day to day whether she was going to be in the office or not. And what she formally requested had no weekly schedule component, had no regularity, no predictability whatsoever, and that's the difference. People can be out, but if we know when they're going to be in, we can work around that. But if I don't know on any given day if somebody's going to show up or not, what if I hadn't showed up this morning, that would not have worked. We need to know when folks are going to be here. Ford is proud of the flexibility that it gives its employees, but it also expects everybody to work during core business hours. And when you're on deck, we need to know that we can count on you to be there. If the Court has no further questions. Apparently not. Thank you, Ms. Walker. Thank you. Previously scheduled meetings, for example, if teleworkers are teleworking on Monday, therefore Ford knows to schedule a meeting on Wednesday, previously scheduled meetings are the very easiest kind of meeting to attend remotely because there's time to set up the sort of technology that would enable that to occur. Ford is continuing to make a strong argument that Ms. Harris was not qualified for her job. Nevertheless, for six years, for every year of her employment up to the time of her accommodation request, Ford rated her exceptional plus. It's hard to argue that an employee is not qualified when they rate her exceptional plus over and over and over. Well, they're saying she was not qualified because she couldn't be there, not because of her performance. They argue that her attendance record makes her unqualified. They are in large part responsible for her attendance record, even when she was working from home producing work that they were then using. They were marking her absent. They weren't paying her for that work. But it's that way of scheduling, of marking her absence, of telling her that if you're too sick to come to the office, you essentially are absent whether you're working or not, and you're not allowed to work, and therefore you're going to fall behind, and then blaming her for the absences and blaming her for falling behind. Ford can't now turn around and say, it's because she had attendance problems and she was falling behind, that she's not qualified. They created that situation. Ms. Coleman, when we sit down and try to figure out whether attendance really was an essential feature of this job, is it fair for us to look at the notes of these two meetings that Ford had with your client? Absolutely. And are they accurate? Well, I would urge the court to look at page 1320. Are they accurate? Nobody has challenged them as inaccurate. In fact, you've relied on certain experts. Yes, we have. Now, she says right in these notes that we're going to assume for our discussion here that are accurate, that she can't do at least four of these primary responsibilities from home. Yet these are the same responsibilities that her co-workers. Is that true? She said that, yes. So what we would have to do is then either agree with her or find that there was a genuine issue of fact as to whether those things that she admits she can't do at home were not essential, didn't fall within the category of being essential to this particular job. Absolutely not. Because even under her proposal of up to four days, even interpreting that proposal in its most extreme sense, she still would have been in the office at least one day a week, and probably more, because as she told Ford, she did not anticipate needing to telework four days a week. She said that when she was asking for up to four days, she was only stating what the policy allowed. That's on page 1320. She notes that there are some things that she has to be in the office to do, four out of these 11, as a matter of fact, and your construction is that it's permissible for a jury to then say, well, all those things can happen on Friday, or the one day that she shows up. Actually, we can't say Friday, because we don't know what day she's going to show up. Well, again, I'm saying that a jury could but does not have to agree with the EEOC that a flexible schedule of up to four days per week was reasonable. A jury could, however, conclude that it would have been reasonable to give her exactly the same telework arrangement that her co-workers had of one or two days per week. It's true as a factual matter, the co-workers who were teleworking in practice were only teleworking one day a week, but one of them was authorized to telework two days a week. So Ford could have given her that and could have permitted sick leave. Her teleworking co-workers were permitted to take sick leave, and there is evidence that that situation, that allowing her to telework to whatever degree, would have improved her health and would have reduced the need for telework. There's evidence... Your opponent's major argument is predictability. Yes. How do you respond to that? Well, again, if she could have agreed to a predictable schedule, which Ford never suggested that she try, that would have solved the predictability problem. There is evidence in the record that she has gone for up to one year with no IBS symptoms. At the time of her deposition, she had just gone three or four months with no IBS symptoms. So we're not looking at an illness that is going to require her to be out all the time into the indefinite future. There are healthy periods, and she could have gotten to these healthy periods. The period that you're referring to was after she was off work? I mean, she was fired? Well, that was the three to four months, but no, the one year was before that. And I would also... Would you agree that Ford wins if the record shows beyond a doubt that she couldn't agree to exactly the accommodation the other employees had? That would seem to me to suggest Ford wins, the narrowest way of thinking about the case, because you keep coming back to this, there were other employees that got one day a week, and so we should ask ourselves if that's the right way to frame it. No, Your Honor. They have met the conditions under which they were willing to work, you know, one day a week out of the office. And so far, I don't think that she could, but maybe I'm wrong about that, or maybe that's a tribal issue of fact. Well, Your Honor, the thing is that the ADA requires exceptions to general rules so that even if she couldn't do just one predictable day a week, a jury could still find that it would have been a reasonable accommodation to give her two flexible days a week, for example. Just because Ford didn't do that for anyone else doesn't mean they didn't have to do that for her. The ADA... The whole point of a reasonable... What would be the basis of that finding, either under the two factors in the statute or the five additional ones that you add in your regulations for a total of seven? None of those seven support that proposition. What this Court said in Rohrer is that the Court should not look with tunnel vision at what is an essential function. You need to look at the record evidence as a whole. And here we have testimony that she thought one or two days a week could work, and she knew her condition better than anyone else. So... Do you have any different take on this one-to-two-day issue? Because, you know, that's ping-pong back and forth. And the way you just said there's evidence in the record, but do you agree that that specific set of words is only from her declaration? Yes, I do agree with that. However, she did expressly tell Ford during these meetings that she wasn't envisioning actually needing to telework four days a week, that she used that language only because she was stating what Ford's written telework policy allowed. From that, an employer not intent in shutting her down on telework would have said, okay, well then let's talk. But a jury could find that Ford just shut down telework. By going through, step by step, what the functions of her job were and asking her, could you do this from home, when they hadn't done that for her coworkers who were teleworking, that could suggest to a jury that they were looking for reasons to say no. And I would like to also emphasize that during this entire period, when she was having her absences, when she was, they're saying, unreliable, they were still rating her exceptional plus. So a jury could certainly find that with some degree of telework, even if it's not as much as she wanted to, she'd be getting work done more than she was getting done without it. When you said telework on two flex days, are you saying that her hours those days would be flex hours? Absolutely not. You're saying that the day of the week might change. Yes, but she was very clear that she would be available during core hours. Ms. Coleman, your time has expired. Are there any other questions? Thank you. Was there another question? I just wondered, do you have a spot in the record where it's clear that she would be available core hours? I can get that for you. Is that something you have available to us now? No, but I can certainly send a letter, if you would like. That's fine. Okay. Okay, thank you, Ms. Coleman and Ms. Walker, for your arguments today. We very much appreciate them. The case will be submitted, and the clerk may...